1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  | SANTOS A. VILLEGAS,                    CASE NO. 1:09-cv-00493-YNP PC

10 |                    Plaintiff,          ORDER REQUIRING PLAINTIFF EITHER TO
                                           FILE AMENDED COMPLAINT OR TO NOTIFY
11 |       v.                              COURT OF WILLINGNESS TO PROCEED
                                           ONLY ON CLAIMS FOUND TO BE
12 | L. L. SCHULTEIS, et al.,              COGNIZABLE

13 |                    Defendants.         (Doc. 13)

14 | _____/          RESPONSE DUE WITHIN 30 DAYS

15

16    Plaintiff Santos A. Villegas ("Plaintiff") is a state prisoner proceeding pro se and in forma

17 pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff is in the custody of the

18 California Department of Corrections and Rehabilitation and is incarcerated at the California

19 Correctional Institution in Tehachapi, California.  Plaintiff is suing under section 1983 for the

20 violation of his rights under the Eighth and Fourteenth Amendments of the U.S. Constitution.

21 Plaintiff names L. L. Schulteis, M. Carrasco, S. Hopkins, M. Soto, F. Rodriguez, F. Martinez, G.

22 Zucker, Knight, A. Stolworthy, D. Walker, and N. Minlschidt as defendants.  For the reasons set

23 forth below, the Court finds that Plaintiff states some cognizable claims.  The Court will order

24 Plaintiff either to notify the Court of his willingness to proceed only on the claims found to be

25 cognizable, or file an amended complaint curing the deficiencies in the non-cognizable claims.

26 **I.    Screening Requirement**

27    The Court is required to screen complaints brought by prisoners seeking relief against a

28 governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

1

1   Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

2   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

3   monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

4   "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

5   dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

6   claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

7          In determining whether a complaint fails to state a claim, the Court uses the same pleading

8   standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must

9   contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

10  R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual

11  allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

12  accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

13  Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter,

14  accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550

15  U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's

16  liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id.

17  (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual

18  allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.

19  Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

20  statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

21  **II.    Background**

22         **A.    Procedural Background**

23         Plaintiff filed the Original Complaint in this action on February 25, 2009. (Doc. #1.) The

24  Court screened Plaintiff's Original Complaint on July 28, 2009. (Doc. # 12.) The Court found that

25  Plaintiff's Original Complaint stated some cognizable claims and ordered Plaintiff either to proceed

26  only on the cognizable claims or to file an amended complaint that cured the deficiencies in the

27  claims found to be non-cognizable. Plaintiff filed his First Amended Complaint on August 24, 2009.

28  (Doc. #13.) This action proceeds on Plaintiff's First Amended Complaint.

**B.**   **Factual Background**

Plaintiff claims that correctional officers entered his cell and attacked him on April 26, 2008. The incident began when dinner trays were being passed out by Defendant Zucker. Plaintiff complained that he was missing his tortillas, which led to a hostile verbal exchange between Plaintiff and Zucker. Zucker threw Plaintiff some tortillas through his tray slot and walked off, muttering racial remarks.

Later, Defendant Rodriguez began collecting the dinner trays. Rodriguez opened Plaintiff's tray slot, Plaintiff placed his tray on it, and Rodriguez jumped back and exclaimed, "He's trying to slice me, he's trying to slice me." Plaintiff realized he was being set-up and retreated to the back of his cell. Rodriguez discharged pepper spray into Plaintiff's cell and other correctional officers (Defendants Zucker, Soto, Martinez, and Knight) arrived at Plaintiff's cell.

Soto asked Plaintiff if he was going to "cuff up". Plaintiff indicated that he would. After Plaintiff was cuffed, Plaintiff was ordered to get on his knees. After Plaintiff got on his knees, he was socked in the back of the head. Zucker began yelling, "Stop resisting, stop resisting," presumably to give the impression that the use of force was justified. Plaintiff continued to be socked in his head and body, when one of the correctional officers slammed his knee into Plaintiff's back. Soto then told the officers to stop and to put the ankle chains on Plaintiff.

Plaintiff was dragged out of his cell and escorted down the stairs by Knight, Martinez and Zucker. Defendant Minlschmidt delivered a wheel chair. The correctional officers continued to escort Plaintiff to the dining hall. When the group arrived in the rotunda, Plaintiff was slammed against the wall, slammed into the floor, then kicked in the center of his back. Plaintiff was then dropped, causing his face to be slammed against the floor. When the group arrived in the dining hall, Plaintiff's clothing was cut off. Martinez ordered Plaintiff to get on his knees, removed Plaintiff's ankle chains, and pushed Plaintiff into a holding cage. Plaintiff was ordered to clean the blood off his body and floor.

Minlschmidt arrived to interview Plaintiff. After some initial reluctance Plaintiff told Minlschmidt that the correctional officers had set him up. Plaintiff complains that Minlschmidt did

///

1  not record the details of the attack.  After Minlschmidt left, Martinez approached Plaintiff and said,

2  "You fucked up," and left.

3        Zucker arrived 20-25 minutes later and held papers in each hand.  Zucker stated, "I have two

4  reports, one saying we didn't find a weapon and this one says we found a weapon."  Zucker

5  threatened Plaintiff and told him that when they video tape him, he had better say that he does not

6  want to participate.  Defendant Hopkins arrived with the camera and Plaintiff repeated what Zucker

7  had told him to say.

8        Plaintiff was then escorted back to his cell by Knight.  Plaintiff looked at his property and

9  noticed that some of it was missing.  Plaintiff asked Knight about his property and Knight told

10 Plaintiff, "You're lucky you're getting anything."

11       Plaintiff complains that Defendants conspired to generate a "trumped up" report to justify

12 the beating that he received.  Defendants later submitted a false complaint to the district attorney's

13 office charging Plaintiff with attempted battery on a peace officer.  However, Plaintiff was not

14 prosecuted.  Plaintiff further complains that he got a "9 month aggreviated[sic] SHU with an

15 undetermined on top."  Plaintiff alleges that he lost partial hearing and suffered permanent injury to

16 his back as a result of the attack.

17 **III.    Discussion**

18       **A.      Eighth Amendment Claims**

19       Plaintiff claims that Defendants violated his rights under the Eighth Amendment through

20 their use of excessive force and their denial of sufficient medical care.  The Eighth Amendment

21 prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic

22 concepts of dignity, civilized standards, humanity and decency.'"  Estelle v. Gamble, 429 U.S. 97,

23 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)).  A prison official

24 violates the Eighth Amendment only when two requirements are met: (1) the objective requirement

25 that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting

26 Wilson v. Seiter, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official

27 has a "sufficiently culpable state of mind", Id. (quoting Wilson, 501 U.S. at 298).  The objective

28 requirement that the deprivation be "sufficiently serious" is met where the prison official's act or

1  omission results in the denial of "the minimal civilized measure of life's necessities". Id. (quoting

2  Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  The subjective requirement that the prison official

3  has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate

4  indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303).  A prison official

5  acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate

6  health or safety". Id. at 837.  "[T]he official must both be aware of facts from which the inference

7  could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

8  Id.

9              1.      **Use of Excessive Force**

10         Plaintiff claims that Defendants violated his rights under the Eighth Amendment through

11  their actions in relation to the use of excessive force incident.  Where prison officials are accused

12  of using excessive physical force, the issue is "'whether force was applied in a good-faith effort to

13  maintain or restore discipline, or maliciously and sadistically to cause harm.'" Hudson v. McMillian,

14  503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-321 (1986)).  Factors relevant

15  to the analysis are the need for the application of force, the relationship between the need and the

16  amount of force that was used and the extent of the injury inflicted. Whitley, 475 U.S. at 321.  Other

17  factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably

18  perceived by the responsible officials on the basis of the facts known to them, and any efforts made

19  to temper the severity of a forceful response.  Id.  The infliction of pain in the course of a prison

20  security measure "does not amount to cruel and unusual punishment simply because it may appear

21  in retrospect that the degree of force authorized or applied was unreasonable, and hence

22  unnecessary." Id. at 319.  Prison administrators "should be accorded wide-ranging deference in the

23  adoption and execution of policies and practices that in their judgment are needed to preserve

24  internal order and discipline and to maintain institutional security." Id. at 321-322 (quoting Bell v.

25  Wolfish, 441 U.S. 520, 547 (1970)).

26         Plaintiff alleges that Defendants Rodriguez, Zucker, Soto, Martinez, and Knight were directly

27  involved in the use of excessive force incident.  Plaintiff alleges that he suffered serious injuries as

28  a result of the brutal attack, and that the attack was done with the malicious and wanton intent to

harm Plaintiff, without any relationship to any legitimate penological interest.  Although Plaintiff

cannot specifically identify which Defendants attacked him because he was attacked from behind,

Plaintiff does allege that Rodriguez, Zucker, Soto, Martinez, and Knight were all in direct proximity

to the attack.  Plaintiff states a cognizable claim for use of excessive force in violation of the Eighth

Amendment against Defendants Rodriguez, Zucker, Soto, Martinez, and Knight.

Plaintiff claims that Defendants Schulteis (chief deputy warden) and Carrasco (associate

warden) violated Plaintiff's rights under the Eighth and Fourteenth Amendments through their failure

to protect Plaintiff from attack by their correctional officer employees.  Plaintiff alleges that he

specifically warned Schulteis and Carrasco before the use of excessive force incident that the

correctional officers were harassing him and other inmates in retaliation for the April 3, 2008

incident where Southern Hispanics attacked guards on the general population yard.  Plaintiff alleges

that Schulteis and Carrasco were then made aware of the threat to his safety and failed to take any

steps to prevent further harassment from occurring.  Plaintiff states a cognizable claim against

Defendants Schulteis and Carrasco.

Plaintiff alleges that Defendant Stolworthy was "at the bottom of the stairs" and Defendant

Walker was in the control tower when the attack took place.  Although Plaintiff does not allege that

Stolworthy and Walker directly participated in the attack, Plaintiff alleges that both correctional

officers had the opportunity to intervene and failed to take action to prevent the attack from

occurring.  However, it is unclear whether Plaintiff alleges that Stolworthy and Walker could have

intervened in any meaningful manner for Eighth Amendment purposes.  Plaintiff alleges that

> Stolworthy was at the bottom of the stairs when everyone first
> responded.  However, due to their trumped up story to aid & abet
> each other, Stolworthy put herself on the stairs at my door, as a so-
> called respondant[sic] so in her own words, she had the opportunity
> & was capable of interceding, or why is she lying in her report.

(Compl. ¶ 41.5.[1])  The Court's interpretation of Plaintiff's poorly-worded allegation is that

Stolworthy lied in a report and stated that she was "on the stairs at [Plaintiff's] door" and claimed

that she responded to the disturbance.  Plaintiff's allegations, even if accepted as true (that

---

[1]Plaintiff's unusual paragraph numbering system subdivides paragraph 41 into twelve separate paragraphs
(one for each defendant).  The Court's citation to paragraph 41.5 refers to the fifth sub-paragraph of paragraph 41.

Stolworthy lied and claimed she responded to the disturbance and was at Plaintiff's door), are not sufficient to support an Eighth Amendment claim.  Stolworthy is only liable for her actions or inactions that could be said to have caused the attack to happen.  The critical inquiry is whether Stolworthy was close enough to the attack to have had a reasonable opportunity to prevent it from happening. It is irrelevant for Eighth Amendment liability purposes whether Stolworthy lied in post-incident reports about her whereabouts during the incident.  Thus, if Stolworthy had lied in a report and claimed that she was in a position to prevent the attack, but in reality she was not close enough to prevent the attack, she is not liable for an Eighth Amendment violation.  Further, in order to be liable, Stolworthy must have been aware that a constitutional violation was occurring and deliberately failed to make an effort to prevent it.  Stolworthy is not liable for a violation of the Eighth Amendment if she believed at the time the attack took place that her fellow correctional officers were engaged in a legitimate use of force, or was unaware of what was going on.  Plaintiff does not allege that Stolworthy was aware that the use of force was excessive and unnecessary. Plaintiff's allegation Defendant Zucker yelled "stop resisting, stop resisting" throughout the attack suggests that Stolworthy may have believed that the use of force was legitimate.  Plaintiff fails to allege sufficient facts that show Stolworthy's actions and state of mind rose to the level of an Eighth Amendment violation.

Similarly, Plaintiff's allegations against Defendant Walker are insufficient to support an Eighth Amendment claim.  Again, Plaintiff's conclusion that Walker had the opportunity to intervene is ambiguous.  Plaintiff's allegations against Defendant Walker focus on his liability for submitting a false report to cover up the incident on behalf of his fellow correctional officers. Plaintiff alleges

> Walker violated my rights by submitting a false report.  And trys[sic] to cover up for the rest of the defendants.   C/O Walker he collaborated with the trumped up story falsifying a rules & regulations 115/incident report.  Making him constructive reliable. This is my life that was in jeoperdy[sic] of being condemned to life in prison for a falsified document because these C/O's want to stick together & make up a story for retaliation.

(Compl. ¶ 41.6.)  Thus, it appears that Plaintiff alleges that Walker "failed to intervene" by his failure to submit accurate reports about his fellow correctional officers' actions.  While Walker's

actions in submitting a false report and covering up the incident to protect his fellow correctional officers are wrongful, they do not rise to the level of an Eighth Amendment violation. Walker is only liable for his actions or inactions that could be said to have caused the attack to happen. Walker's actions in filing a false report cannot be said to have caused the attack to happen because by then the attack had already occurred. In order to be liable, Walker must have been in a position where he had a reasonable opportunity to prevent the attack from occurring. Plaintiff has offered no explanation as to what Walker could have done from his position in the control tower to prevent the attack from occurring. Further, Plaintiff has not alleged that Walker was aware that a constitutional violation was taking place. Walker is not liable if he believed at the time the attack took place, that his fellow correctional officers were engaged in a legitimate use of force, or was unaware of what was going on. Plaintiff's allegations do not show that Walker failed to prevent the attack through his deliberate indifference.

Plaintiff also alleges that Defendants Minlschmidt and Hopkins chose to "aid and abet" the use of excessive force incident by failing to fully document Plaintiff's injuries, failing to report Plaintiff's claim that he was beaten by correctional officers, or "did the video camera too fast, purposely avoiding my injuries." (Compl. ¶ 41.3.) Again, Minlschmidt and Hopkins are only liable for the actions or inactions that could be said to have caused the attack to occur. Minlschmidt and Hopkins' actions after the Eighth Amendment violation had already occurred cannot be said to have caused or contributed to the violation. The attack had already happened and Minlschmidt and Hopkins' actions in failing to fully document Plaintiff's claims did not cause Plaintiff to get attacked. Their actions only caused the participants in the attack to avoid punishment, which is not sufficient to support an Eighth Amendment claim. Plaintiff fails to state any cognizable claims against Defendants Minlschmidt or Hopkins for violating the Eighth Amendment.

## 2. Denial of Medical Care

Plaintiff claims that Defendant Minlschmidt violated Plaintiff's Eighth Amendment rights by failing to provide constitutionally sufficient medical care for his injuries after the use of excessive force incident. "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "A 'serious' medical need exists

8

1  if the failure to treat a prisoner's condition could result in further significant injury or the

2  'unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

3  1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)

4  (quoting Estelle, 429 U.S. at 104). Delay of medical treatment can amount to deliberate indifference.

5  See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Clement v. Gomez, 298 F.3d 898, 905 (9th

6  Cir. 2002); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122,

7  1131 (9th Cir. 2000) (en banc); Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); McGuckin,

8  974 F.2d at 1059; Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).   However, "a

9  complaint that a physician has been negligent in diagnosing or treating a medical condition does not

10  state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does

11  not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble,

12  429 U.S. 97, 106 (1976).  Isolated occurrences of neglect do not constitute deliberate indifference

13  to serious medical needs.  See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); McGuckin v.

14  Smith, 974 F.2d 1050, 1060 (9th Cir. 1992); O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990).

15       Plaintiff claims that Defendant Minlschmidt was deliberately indifferent to Plaintiff's

16  medical needs and that the failure to treat his injuries resulted in the loss of partial eye sight, partial

17  hearing, and pain in his back.  However, Plaintiff has failed to provide any allegations to support his

18  conclusion that Minlschmidt acted with deliberate indifference.  The failure to provide medical care,

19  or the negligent treatment of an inmate's medical needs is not in itself sufficient to rise to the level

20  of an Eighth Amendment violation.  The denial of medical care must have been done with deliberate

21  indifference–Minlschmidt must have known and disregarded an excessive risk to Plaintiff's health.

22  Plaintiff fails to identify what risk Minlschmidt was aware of and disregarded.  Plaintiff does not

23  identify what kind of treatment he should have received that would have prevented the long-term

24  injuries Plaintiff suffered, nor does he allege that Minlschmidt was aware that Plaintiff should have

25  received a particular kind of treatment.  Nor does Plaintiff allege that he specifically requested any

26  treatment and Minlschmidt denied the request.  Plaintiff fails to state a cognizable claim against

27  Defendant Minlschmidt for deliberate indifference to his serious medical needs.

28  ///

### B.   **Fourteenth Amendment Due Process Claims**

Plaintiff alleges that his due process rights were violated by Defendants.  The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).

Plaintiff has not alleged any facts that support a due process claim.  Plaintiff's right to be free from the use of excessive force is one that is explicitly protected by the Eighth Amendment. [W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims."  Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted).  Thus, Defendants actions in attacking Plaintiff are more properly the basis of an Eighth Amendment claim, rather than a Fourteenth Amendment Due Process claim.

Plaintiff alleges that Defendants failed to report all the facts of the incident in their reports and fabricated facts to make it appear Plaintiff attacked Defendants.  Plaintiff undoubtedly alleges conduct by Defendants that is wrongful.  However, Defendants' misconduct does not become a constitutional violation under the Due Process Clause unless it caused Plaintiff to suffer injury that could be characterized as a deprivation of a protected liberty interest.  Plaintiff must allege that he suffered from an atypical and significant hardship in relation to the ordinary incidents of prison life.

Plaintiff complains that the false reports were forwarded to the district attorney's office but Plaintiff was not prosecuted.  Plaintiff also complains that he was forced to serve a term in the SHU/administrative segregation.  Plaintiff has not demonstrated that either can be said to be so serious as to amount to an atypical and significant hardship in relation to the ordinary incidents of prison life.  The Supreme Court has held that prisoners have no state-created liberty interest in

avoiding placement in disciplinary segregation for 30 days because segregated confinement did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." <u>Sandin</u>, 515 U.S. at 484.   The 9th Circuit has held that "administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence." <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997) (citing <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1091-92 (9th Cir. 1986)).   And another district has stated that "[n]either the degree nor the duration of the restraint imposed by administrative segregation gives rise to a protected liberty interest.   Although, clearly, a reduction in the level of [a prisoner's] privileges would be unpleasant . . . the Court cannot conclude that the restrictions on [a prisoner's] . . . privileges amounted to a major disruption in his environment." <u>Bryant v. Cortez</u>, 536 F. Supp. 2d 1160, 1167 (C.D. Cal. 2008) (finding that conditions in ASU restricting exercise, shower, hygiene, visitation, work, educational, and telephone privileges did not give rise to a protected liberty interest).   Although SHU/administrative segregation terms may be less pleasant that time spent in the general population, Plaintiff has not offered any allegations that suggest his SHU/administrative segregation term was a serious enough deprivation to rise to the level of a constitutional violation.   Plaintiff does not provide any allegations regarding the conditions in the SHU/administrative segregation.   Thus, Plaintiff has not alleged that he was deprived of a protected liberty interest.   Plaintiff allegations regarding the fabricated reports fail to state a claim for violation of his due process rights.

### C.   Fourteenth Amendment Equal Protection Claims

Plaintiff claims that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment.   The Equal Protection Clause requires that persons who are similarly situated be treated alike. <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985). A plaintiff can establish an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. <u>See, e.g.</u>, <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 686 (9th Cir.2001).   Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class. <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1167 (9th Cir.2005).   "Prisoners are protected under ///

1  the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on

2  race." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).

3        Plaintiff alleges that correctional officers began harassing Plaintiff and other Mexican

4  inmates after an incident on April 3, 2008 when Southern Hispanics attacked officers on the general

5  population yard.  Plaintiff alleges that the attack against him was a retaliatory attack against Mexican

6  inmates.  Plaintiff thus alleges that he was singled out and attacked on the basis of his membership

7  in a suspect class - race.  Plaintiff states a cognizable claim against Defendants Rodriguez, Zucker,

8  Soto, Martinez, and Knight for violation of the Equal Protection Clause of the Fourteenth

9  Amendment.

10  **IV.    <u>Conclusion and Order</u>**

11        Plaintiff's complaint states cognizable claims against Defendants Rodriguez, Zucker, Soto,

12  Martinez, Knight, Schulteis, and Carrasco for violation of the Eighth Amendment and against

13  Defendants Rodriguez, Zucker, Soto, Martinez, and Knight for violation of the Equal Protection

14  Clause of the Fourteenth Amendment.  Plaintiff's complaint fails to state claims against any other

15  defendants.  The Court will provide Plaintiff with a <u>final</u> opportunity to file an amended complaint

16  curing the deficiencies identified by the Court in this order. <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49

17  (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in

18  his amended complaint.  <u>George v. Smith</u>, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot"

19  complaints).

20        If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only

21  on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and

22  the Court will issue a recommendation for dismissal of the other claims and defendants, and will

23  forward Plaintiff seven (7) summonses and seven (7) USM-285 forms for completion and return.

24  Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of

25  process.

26        If Plaintiff opts to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a).

27  Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's

28  constitutional or other federal rights: "The inquiry into causation must be individualized and focus

on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.  In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.      Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

a.      File an amended complaint curing the deficiencies identified by the Court in this order, or

b.      Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Rodriguez, Zucker,

13

Soto, Martinez, Knight, Schulteis, and Carrasco for violation of the Eighth Amendment and against Defendants Rodriguez, Zucker, Soto, Martinez, and Knight for violation of the Equal Protection Clause of the Fourteenth Amendment; and

3.     If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.


IT IS SO ORDERED.

**Dated:**   **September 28, 2009**                    _____ **/s/ Gary S. Austin**                
                                             UNITED STATES MAGISTRATE JUDGE